NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| **EDYTA ROJECKI,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **Civil Action No. 15-8160 (ES)** |
| **v.** | : | |
| | : | **MEMORANDUM OPINION** |
| **BANK OF AMERICA, N.A., et al.,** | : | |
| | : | |
| **Defendants.** | : | |

Before the Court is Defendant Bank of America, N.A.'s ("BANA" or "Defendant") motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). (D.E. No. 4-2 ("Def. Mov. Br.") at 5). The two other Defendants—Stern, Lavinthal & Frankenberg, LLC ("Stern Lavinthal") and Assunta Cacciatore—join BANA's motion to dismiss and submit those arguments in support of their dismissal from this action. (D.E. No. 7). Plaintiff Edyta Rojecki ("Rojecki" or "Plaintiff") opposes Defendants' motion. (D.E. No. 8 ("Pl. Opp. Br.")). None of the Defendants submitted a reply in support of their motion to dismiss.

The Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b). For the reasons below, the motion to dismiss is DENIED-in-part and RESERVED-in-part.

**I. Background**[1]

From 2005 onwards, Rojecki lived in a certain property in Elmwood Park, New Jersey. (*See* D.E. No. 1 ("Compl.") ¶ 8). But "Rojecki was unable to make her monthly mortgage payments and defaulted on her mortgage on or about March 1, 2012." (*Id.* ¶ 9). BANA

---

[1] The Court must accept Rojecki's factual allegations as true for purposes of resolving the pending motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bistrian v. Levi*, 696 F.3d 352, 358 n.1 (3d Cir. 2012).

subsequently offered Rojecki a "loan modification," which "provided for three trial payments." (*Id.* ¶ 10).  "To accept the loan modification offer[,] Rojecki needed to either make the first trial payment or sign and return the offer before September 20, 2012."  (*Id.*).

Rojecki did not do so, however, because "the amounts asked for were beyond her ability to pay and were not based upon a sufficient review of her application."  (*Id.* ¶ 11).  Given "Rojecki's refusal to accept the terms of the trial modification," BANA denied the loan modification.  (*See id.* ¶¶ 10, 12).

"After the denial, Rojecki submitted a full loan modification package for review by [BANA]."  (*Id.* ¶ 13).  "Rojecki was subsequently denied a home loan modification, again based upon the modification package submitted."  (*Id.* ¶ 14).  In August 2013, Rojecki requested reconsideration of this denial.  (*Id.* ¶ 15).  And, in March 2014, Rojecki submitted "a request for a loan modification, including a Uniform Borrower Assistance Form," to BANA.  (*Id.* ¶¶ 15-16).  In early November 2014, Rojecki had bank statements faxed to BANA in support of her March 2014 loan modification request "at the request of [BANA] for additional information."  (*Id.* ¶ 17).  Later in November 2014, "Rojecki again provided updated documents to [BANA]"— including another Uniform Borrower Assistance Form—"at the request of [BANA] for additional information."  (*Id.* ¶ 18).

On or about January 17, 2015, however, Rojecki was informed that her property was scheduled for a sale on February 27, 2015.  (*See id.* ¶ 19).  Up to this point, BANA had "never rejected or denied [her] requests in any form," but instead was "continuing to review her situation."  (*See id.* ¶ 21).  And, "[e]ven with the pending sale, Rojecki continued to try to modify her home loan," and, on or about February 12, 2015, she provided BANA additional documentation "at the request of [BANA] for additional information."  (*Id.* ¶ 22).

But, on or about February 13, 2015, Stern Lavinthal—a law firm "representing banks, lending institutions and real estate entities concerning litigating foreclosure cases on their behalf throughout New Jersey"—notified Rojecki "that her family's home was scheduled to be sold on February 27, 2015." (*Id.* ¶¶ 6, 23).

Nevertheless, on or about February 24 and 25, 2015, Rojecki provided more documentation to BANA "upon [BANA's] request." (*Id.* ¶ 24). And, on or about February 25, 2015, Stern Lavinthal notified Rojecki "that the scheduled sale has been postponed until [M]arch 27, 2015." (*Id.* ¶ 25). On or about February 26, 2015, Rojecki provided additional documentation to BANA "at the request of [BANA] for additional information," (*id.* ¶ 26), and on or about March 19, 2015, Rojecki provided—"for the third time"—a Uniform Borrower Assistance Form to BANA, (*id.* ¶ 27).

On or about April 3, 2015, however, BANA denied Rojecki's loan modification request. (*Id.* ¶ 28). Although this denial notification indicated that Rojecki's loan "was previously modified" and that she was limited to only certain modifications over certain time periods, Rojecki had never received a modification in the delineated time periods. (*Id.* ¶¶ 28-29).

Nevertheless, on or about May 14, 2015, BANA informed Rojecki that she could re-apply for a loan modification and so she "went about gathering her documents and prepared to submit yet another package to [BANA] for review." (*Id.* ¶ 31). "At this point neither [BANA] nor [Stern Lavinthal] had notified Rojecki of any pending new sale date for the property." (*Id.* ¶ 32).

So, on or about May 18, 2015, Rojecki re-applied "for a loan modification by sending in a complete package for review," and, on May 20, 2015 and May 28, 2015, BANA requested additional documentation—which Rojecki provided—concerning her loan modification request.

- 3 -

(*See id.* ¶¶ 33-35).  On or about May 28, 2015, however, Stern Lavinthal informed Rojecki that the sale of her property was scheduled for June 5, 2015.  (*Id.* ¶ 36).  Still, Rojecki continued to provide documents requested by BANA and, on or about June 2, 2015, she provided a fourth Uniform Borrower Assistance Form to BANA.  (*Id.* ¶ 37).

On June 5, 2015, BANA sold Rojecki's home.  (*Id.* ¶ 38).  Yet, on or about June 16, 2015, BANA sent her a letter "indicating that it was still in the process of reviewing her loan for a loan modification."  (*Id.* ¶ 39).  And BANA subsequently "requested yet more documentation for their supposed continuing review of Rojecki's loan for a modification even though the property had been sold twelve days prior."  (*Id.* ¶ 40).

Rojecki asserts the following seven causes of action: (1) violations of the Real Estate Settlement Procedures Act ("RESPA"); (2) violations of the New Jersey Consumer Fraud Act ("NJCFA"); (3) negligent misrepresentation; (4) negligent processing of loan modifications; (5) negligence; (6) unjust enrichment; and (7) intentional fraud.  (*See id.* ¶¶ 43-88).  Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants move to dismiss all seven claims.  (*See* D.E. Nos. 4 & 7).

## II.    Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."

*Id.*  Determining whether there is "a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.

"When reviewing a motion to dismiss, '[a]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom.'"  *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992)).  But the court is not required to accept as true "legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.

So, the inquiry is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged."  *Malleus*, 641 F.3d at 563.

Finally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case." (internal quotation marks, textual modifications and citations omitted)).

III.    **Discussion**

A.  **Plaintiff's RESPA Claim (Count 1)**

In her Complaint, Rojecki asserts violations under RESPA.  In particular, she alleges that the "acts and omissions" alleged in the Complaint violate RESPA, including that:

> a. Said actions of the Defendant(s) culminated in the sale of the Plaintiff's residence and home when there was a prohibition against the foreclosure and/or sale of any real property in violation of 12 C.F.R. 1024.41(g), 12 U.S.C. § 2605(f).
>
> b. The Defendant(s) failure to pursue loss mitigation options offered by the Defendant(s) ('the Servicer') culminated in the sale of the Plaintiff's residence and home when there was a prohibition against the foreclosure and/or sale of any real property in violation of 12 C.F.R. 1024.41(g), 12 U.S.C. § 2605(f).

(Compl. ¶ 44).

BANA argues that Rojecki "fails to state a cognizable claim for relief because her own Complaint acknowledges that the loan modification package submitted in May 2015 was incomplete." (Def. Mov. Br. at 10).  It asserts that her "own Complaint makes it irrefutably clear that she did not provide a complete loan modification package to BANA more than thirty-seven (37) days before the scheduled sale" and, even if "the package Plaintiff submitted on May 18, 2015 was complete, though it was not, the package was not provided more than thirty-seven (37) days before the scheduled sale on June 5, 2015." (*Id.* (citing Compl. ¶¶ 36, 38)).

In opposition, Rojecki argues that the "issue of whether or not the package submitted on May 18, 2015 was a complete package is a question of fact," and if "[h]olding the facts, as set forth in the complaint, in a light most favorably to the non-moving party, the package in question was complete." (Pl. Opp. Br. at 2).  So, Rojecki asserts that, "[h]olding the facts, as set forth in the complaint, in a light most favorably to the non-moving party, the complete package,

- 6 -

submitted on May 18, 2015, was submitted thirty-seven (37) days prior to any known scheduled sale date." (*Id.* at 2-3).

The Court declines to dismiss Rojecki's RESPA claim based on BANA's arguments. Under RESPA's "Regulation X," 12 C.F.R. § 1024.41, a loan servicer cannot refer a mortgage for foreclosure proceedings under certain circumstances. *See, e.g.*, *Beard v. HSBC Mortg. Servs.*, No. 15-1232, 2016 WL 3049310, at *3 (W.D. Mich. May 31, 2016); *Wilson v. Bank of Am., N.A.*, 48 F. Supp. 3d 787, 799 (E.D. Pa. 2014). In relevant part, 12 C.F.R. § 1024.41(g) provides that "[i]f a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale."[2]

Here, it appears that BANA is only challenging Rojecki's May 18, 2015 application to try and dismiss her claim brought under RESPA's Regulation X. (*See* Def. Mov. Br. at 9-10). In particular, BANA challenges her May 18 package on the following two grounds: (1) that it was an incomplete package; and (2) even if it was complete, it was not timely submitted. (*See id.*).

To be sure, BANA acknowledges Rojecki's allegation that, on or about May 18, 2015, Rojecki "did re-apply for a loan modification by sending in a complete package for review." (*Id.* at 10 (quoting Compl. ¶ 33)). BANA, however, cites Rojecki's allegations showing that it requested additional documentation and argues that "the Complaint makes clear that Plaintiff was repeatedly submitting partial modification packages in an attempt to delay the sale of the Property." (*Id.* (citing Compl. ¶¶ 34-36)).

The "allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus*, 641 F.3d at 563

---

[2] 12 U.S.C. § 2605(f) provides for damages and costs associated with certain RESPA violations.

(citation omitted).    Thus, the Court cannot infer from BANA's requests for additional documentation that Rojecki submitted an incomplete application; the Court must draw every favorable inference in favor of Rojecki—not BANA—at this stage.    In other words, BANA improperly infers from the factual allegations that its requests for additional documentation shows that Rojecki's application was incomplete.[3]    Instead, the appropriate inference from Rojecki's allegations is that her application was under active review.

Further, the Court is not persuaded by BANA's argument that, "[e]ven if the package Plaintiff submitted on May 18, 2015 was complete, . . .  the package was not provided more than thirty-seven (37) days before the scheduled sale on June 5, 2015." (Def. Mov. Br. at 10 (citing Compl. ¶¶ 36, 38)).  BANA sidesteps Rojecki's allegation that, "on or about May 28, 2015, [Stern Lavinthal] finally sends a letter to Rojecki informing her that the sale of the Property is now scheduled for June 5, 2015." (*See* Compl. ¶ 36).  In fact, Rojecki alleges that earlier, on or about May 14, 2015, Rojecki was informed that she *could* re-apply for a loan modification, she relied on BANA's representation, and, at this point, "neither [BANA] nor [Stern Lavinthal] had notified Rojecki of any pending new sale date for the property." (*Id.* ¶¶ 31-32).  Therefore, the appropriate inference from Rojecki's allegations is that there was no scheduled sale date when Rojecki submitted her May 18 application such that the 37-day rule could bar her submission.

---

[3] BANA attempts to offer "[a] copy of [a] May 20, 2015 letter" that purportedly states, in part, that "[a]s of the date of this letter, we cannot complete our review of your loan because some financial information we need from you is missing or incomplete." (Def. Mov. Br. at 10 n.4).  But BANA advances no legal argument as to how the Court can consider any such correspondence at this stage.  In any event, BANA seemingly fails to actually provide this letter to the Court.  So, even if the Court was convinced that it could consider this May 20 letter at this stage, no such letter has been provided to the Court.

### B.  Plaintiff's Remaining Claims (Counts 2-7)

As noted above, Rojecki's other claims are: violations of the NJCFA; negligent misrepresentation; negligent processing of loan modifications; negligence; unjust enrichment; and intentional fraud.  (*See* Compl. ¶¶ 48-88).  Defendants move to dismiss these claims.

While the motion to dismiss was pending, Rojecki brought a preliminary injunction motion requesting this Court "to stop [BANA's] enforcement of its writ of possession currently setting the date of July 13, 2016 for the Plaintiff to vacate her property and to further stop, enjoin or refrain [BANA] from selling, transferring, or in any other way taking any action effecting or that may affect" Rojecki's Elmwood Park property "until this case is resolved."  (D.E. No. 11-1 at 4).

As discussed above, the Court denies BANA's motion to dismiss Rojecki's RESPA claim, which accordingly confers subject matter jurisdiction over this action.  *See* 28 U.S.C. § 1331.  Pursuant to the Court's inherent authority to manage the disposition of civil matters appearing on its docket and promote judicial economy, *see Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936), the Court reserves adjudicating BANA's motion to dismiss Rojecki's state law claims at this time so that the Court may promptly address her preliminary injunction motion.[4]

---

[4] BANA argues that "Plaintiff bases her Complaint against BANA on alleged HAMP violations," but that she "lacks standing to sue for alleged violations of federal HAMP guidelines."  (Def. Mov. Br. at 8-9).  Indeed, Rojecki alleges that BANA's April 3, 2015 denial letter failed to provide certain information "required by the HAMP Handbook section 2.3.2."  (Compl. ¶ 30).  But it does not appear that Rojecki is asserting a claim based on HAMP violations based on the Court's review of her causes of action.  To the extent that any of her non-RESPA claims are based on HAMP violations, the Court will address this issue at a later time.

**IV.    Conclusion**

      For the above reasons, the Court declines to dismiss Plaintiff's RESPA claim and reserves ruling on her remaining causes of action.   An appropriate Order accompanies this Memorandum Opinion.

*s/Esther Salas*

**Esther Salas, U.S.D.J.**
